GEORGE STILL, PLAINTIFF-APPELLANT, v. BOARD OF TRUSTEES OF THE PUBLIC EMPLOYEES' RETIREMENT SYSTEM, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued September 14, 1976—Decided September 28, 1976.

104

Before Judges MATTHEWS, SEIDMAN and HORN.

*Mr. John F. Strazzullo* argued the cause for appellant.

*Mr. Samuel J. Halpern,* Deputy Attorney General, argued the cause for respondent (*Mr. William F. Hyland,* Attorney General, attorney; *Ms. Erminie L. Conley,* Deputy Attorney General, of counsel).

The opinion of the court was delivered by
HORN, J. A. D. George Still, claimant, appeals from the decision of the Board of Trustees of the Public Employees' Retirement System (board) denying his application for accidental disability retirement under the terms of *N. J. S. A.* 43:15A–43, the relevant portions of which are as follows:

A member * * * shall * * * be retired by the board of trustees, if said employee is permanently and totally disabled as a direct result of a traumatic event occurring during and as a result of the performance of his regular or assigned duties on an accidental disability allowance.
*       *       *       *       *       *       *       *
Permanent and total disability resulting from a * * * musculoskeletal condition which was not a direct result of a traumatic event occurring in the performance of a duty shall be deemed an ordinary disability.

The only issue before us, which was resolved by the board adversely to the claimant, is whether claimant's admitted permanent and total disabilty was "a direct result of a traumatic event occurring during and as a result of the performance of his regular or assigned duties," within the meaning of said statute. All other facts qualifying claimant to receive such pension have been found to be present, including his permanent and total disability. We differ from the board in the determination of the issue and accordingly reverse.

Claimant commenced his employment as a laborer with the Department of Transportation of New Jersey in 1956,

and at the time of the alleged traumatic event on the morning of December 17, 1971 he was classified as a Maintenance Man I. In this classification most of his duties consisted of landscaping work, but it also included general outdoor laboring tasks.

In 1965 claimant fell into a hole and sustained an inguinal hernia and possibly some back pain. Following a relatively short absence from his duties, during which time he underwent a herniorrhaphy, he returned to his normal work activities without any apparent interruption. Other than the 1965 incident, he was asymptomatic as to back pain until the incident of December 17, 1971. On that day he was temporarily assigned to work in the department garage. He climbed up on the wheel of a large mechanical sweeping machine in order to retrieve his cap, which had been tossed on the top of the sweeper. While doing so he lost his balance and fell, striking the lumbar portion of his back on a mechanic's steel workbench approximately four feet high. He was stunned but he continued to work for a short time with pain in the lower back area. He then "staggered" to the nurse's office and advised her of the incident. She sent him to the dispensary. At the dispensary he was directed to go home. He left before 12 noon and remained at home the remainder of the week.

From the time of this incident he had pain in the lumbar portion of his back, for which he received fairly constant medical treatment. A physician prescribed a back brace or support shortly thereafter, and he has worn it continuously to ease the pain.

He resumed the duties of his employment with intermittent absences, but found it progressively more difficult to perform them. He could not perform the more strenuous duties. In the spring of 1972, while lifting an 80-pound bag of fertilizer, he felt extraordinary pain in the same area of his lower back, accompanied by chest pain. He consulted his physician that evening. At the latter's direction he was a patient at a hospital for about ten days, during

which time he was treated for hypertension and "osteoarthritis of spine." In April 1973 while operating a 200 to 300-pound mechanical lawnmower, he again felt increased pain in his back. He obtained medical attention. In both of these instances he was attempting to perform his normal duties.

It is undisputed that before December 17, 1971 claimant had a long-standing right lumbar scoliosis and osteoarthritis. However, as already stated, these aberrations were without subjective consequence.

The medical opinions introduced in evidence make it eminently clear that the impact upon claimant's back suffered in the fall on December 17, 1971 triggered the progressive (chronic low back pain) symptoms. By June 1973 it appeared to be evident that claimant was permanently and totally disabled. The incidents which occurred in the spring of 1972 and in April 1973 obviously were residuals of the exacerbation of the condition and not in any degree the causes thereof.

The administrative hearing officer, whose adverse recommendation was approved and adopted by the board, posited his holding that the disability was not a direct result of the December 1971 traumatic incident on two assumptions. The first assumption was that the disability was caused by "chronic unstable low back syndrome and degenerative arthritis." The lack of preexisting subjective or disabling symptoms was not considered. He relied on *Russo v. Teachers' Pension and Annuity Fund*, 62 *N. J.* 142 (1973); *Shea v. Bd. of Trustees, Police & Firemen's Retirem. Sys.*, 116 *N. J. Super.* 348 (App. Div. 1971); *Hillman v. Bd. of Trustees, Public Employees' Retirem. Sys.*, 109 *N. J. Super.* 449, 460 (App. Div. 1970), and *Getty v. Prison Officers' Pension Fund*, 85 *N. J. Super.* 383 (App. Div. 1964).

After the decision of the board our Supreme Court decided *Cattani v. Bd. of Trustees, Police & Firemen's Retirem. Sys.*, 69 *N. J.* 578 (1976). It construed *N. J. S. A.* 43:16A-7, similar in terms to the statute under consideration but

applicable only to police and firemen, with respect to the statutory phrase "as a direct result of a traumatic event."[1] It stated:

> * * * Where, as here, the disability is the end result of a preexisting cardiovascular condition, work effort alone whether unusual or excessive, cannot be considered a traumatic event, even though it may have aggravated or accelerated the preexisting disease. *However, a basis for an accidental disability pension would exist if it were shown that the disability directly resulted from the combined effect of a traumatic event and a preexisting disease.* [at 586 Emphasis supplied]

Dr. Dudley F. Hawkes, the board's physician, testified that the claimant's disability was caused by a combination of the trauma and the osteoarthritic changes in the lumbar spine which were present before December 17, 1971. His opinion coincided with that of Dr. James W. Warren, claimant's attending physician. Thus the proofs introduced in the case fit precisely into the quoted holding of *Cattani*. See *In re Sigafoos,* 143 *N. J. Super.* 469 (App. Div. 1976).

The second assumption of the administrative hearing officer was that since claimant continued to work, albeit with difficulty and with the help of a back brace, the permanent and total disability was not a direct result of the December 17, 1971 episode because the disability "did not become permanent and total until eighteen months thereafter, subsequent to the intervention of two aggravating work episodes in 1972 and 1973." We reject this assumption. The intimation that the episodes of 1972 and 1973 aggravated the condition initiated by the fall is not supported factually or medically. As already observed, these two subsequent inci-

---

[1] *Cattani* held that the term "traumatic event" used in the statute was to be defined as a mishap or accident involving the application of some kind of external force to the body or the violent exposure of the body to some external force, and thus overruled *Hillman v. Bd. of Trustees, Public Employees' Retirem. Sys., supra,* as to the definition of "traumatic event." Under either *Cattani* or *Hillman,* the hearing officer appropriately found that the fall of December 17, 1971 was a "traumatic event."

dents were effects and not causes of the ongoing consequences of the combined trauma and disease. As stated by the board's examining physician, Dr. Hawkes, "[t]he trauma may be the straw that literally broke the camel's back."

It will be noted that the statute itself, *N. J. S. A.* 43:15A–43, recognizes that disability need not follow the accident immediately. It provides:

> The application to accomplish such retirement must be filed within 5 years of the original traumatic event, but the board of trustees may consider an application filed after the 5-year period if it can be factually demonstrated to the satisfaction of the board of trustees that the disability is due to the accident and the filing was not accomplished within the 5-year period due to a delayed manifestation of the disability or to circumstances beyond the control of the member.

*Titman v. Bd. of Trustees Teachers' Pens. and An. Fund,* 107 *N. J. Super.* 244 (App. Div. 1969), cited by the board, is not to the contrary. The claim for permanent and total disability was disallowed in that case because there was no proof of a traumatic injury. See also, *Magnani v. Bd. of Trustees, Public Employees' Retirem. Sys.,* 142 *N. J. Super.* 262 (App. Div. 1976). We are satisfied that the trauma incurred by claimant on December 17, 1971 was the natural and proximate cause of the disability. Therefore it was the "direct" cause of the disability and accordingly the claim should have been allowed.

The decision of the board is reversed, with directions to enter a decision in accordance with the views expressed herein.